UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUN LAN GUAN, QIHUAI LIU, ZIQIANG LU, YOUXING ZHAO, and HUIDE ZHOU, on behalf of themselves and others similarly situated,<br><br>                            Plaintiffs,<br><br>        -against-<br><br>LONG ISLAND BUSINESS INSTITUTE, MONICA FOOTE, and WILLIAM DANTIVA,<br><br>                         Defendants. | Case No. 15-cv-02215 (CBA)(VMS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, DISQUALIFY PLAINTIFFS' COUNSEL

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE LLP
350 Fifth Avenue, 68th Floor
New York, New York 10118
Tel: (212) 868-1010
paloe@kudmalaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ........................ 2

   I.   The Parties .......................................................................................................... 2

   II.  Nature of the Case and Procedural History ......................................................... 3

   III. Instances of Troy's Misconduct that Warrant Disqualification .......................... 4

       A. Attempt to Engage in Ex Parte Discovery .................................................. 5

       B. Failure to Fulfill Discovery Obligations ...................................................... 5

       C. False Statements Submitted to the Court ...................................................... 7

       D. Inappropriate Communications with Hazel ................................................. 8

ARGUMENT ..................................................................................................................... 12

   I.   The Complaint Should Be Dismissed Based on Plaintiffs' Discovery Violations............. 12

   II.  Alternatively, Plaintiffs' Counsel Should Be Disqualified Because His Persistent
       Violations of the Rules Governing Discovery and Ethics Pose a Significant Risk
       of Trial Taint .................................................................................................... 14

       A. Troy's Misconduct Warrants Disqualification.............................................. 15

          i.   Discovery Violations ............................................................................ 15

          ii.  Misrepresentations to the Court............................................................ 17

          iii. Improper Communications with Hazel................................................... 18

       B. Troy's Misconduct Is Not Limited to this Case............................................ 22

   III. The Court Should Refer Troy Law to the Chief Judge for Disciplinary Action ................ 23

CONCLUSION ................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abreu v. City of New York*, 208 F.R.D. 526 (S.D.N.Y. 2002) ....................................................... 12

*Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc.*,
No. 11-cv-3252 (MKB), 2013 WL 2237542 (E.D.N.Y. May 21, 2013) ..................................... 23

*Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273 (S.D.N.Y. 2004) .............. 14

*Carter v. Jablonsky*, 121 F. App'x 888 (2d Cir. 2005) ................................................................... 12

*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973) .................................................. 14

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981) ...................................................... 14

*Gordon v. Dadante*, No. 1:05-cv-2726, 2009 WL 2732827 (N.D. Ohio Aug. 26, 2009) ............ 17

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127 (2d Cir. 2005) ..................... 14

*Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) .................................................................... 14

*Matter of Beiny*, 32 A.D.2d 190, 522 N.Y.S.2d 511 (1st Dep't 1987) .................................. 15, 16

*Niesig v. Team I*, 76 N.Y.2d 363 (1990) ........................................................................................ 19

*Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 F. App'x 107 (2d Cir. 2001) .................. 12

**Statutes and Rules**

FED. R. CIV. P. 30 ............................................................................................................................ 15

FED. R. CIV. P. 37 ..................................................................................................................... 12, 13

FED. R. CIV. P. 45 ............................................................................................................................ 15

Local Civil Rule 1.5 ........................................................................................................................ 23

Rules of Professional Conduct Rule 3.3 ..................................................................... 16, 17, 18, 21

Rules of Professional Conduct Rule 4.2 ......................................................................................... 18

**Other Authorities**

*Attorney Disciplinary Committee*,
UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK,
https://www.nyed.uscourts.gov/nodeblock/attorney-disciplinary-committee ............................... 23

## PRELIMINARY STATEMENT

Defendants Long Island Business Institute ("LIBI"), Monica Foote ("Monica"), and William Dantiva ("William"), by and though their attorneys, Kudman Trachten Aloe LLP, respectfully submit this memorandum of law in support of their motion seeking an order dismissing the complaint pursuant to Rule 37 of the Federal Rules of Civil Procedure or, alternatively, disqualifying John Troy, Esq. ("Troy"), of Troy Law, PLLC ("Troy Law"), as counsel for plaintiffs in this matter, referring Troy to the Chief Judge for disciplinary action, and granting such other and further relief as the Court deems just and proper.

The practice of law in this Court, in New York State, and in state and federal courts throughout the United States is governed by several different sets of rules. These rules cover myriad topics, ranging from professional ethics and court procedures to attorney licensure and advertising. The judicial system—and the judges, attorneys, and litigants that compose and utilize the system—cannot function without these rules. The judicial system breaks down when a party fails to follow the rules, adversely affecting the other parties that are involved in the system by, among other things, forcing them to expend valuable time, energy, and resources to get the system back on course. At best, a party's failure to follow the rules impairs the orderly and efficient administration of justice; at worst, it prejudices another party's rights, depriving that party of a fair trial on the merits of its claims or defenses.

The persistent course of contumacious conduct exhibited by Troy in this case has run the gamut of rules violations and possible harms to defendants caused by those violations. The misconduct committed by plaintiffs and their counsel—at least that which defendants have been able to identify to date—includes: (1) disregarding deadlines ordered by the Court; (2) allowing a non-attorney to enter an appearance on the record during a hearing; (3) failing to appear for

depositions; (4) sending out ex parte subpoenas to non-parties; (5) submitting false affidavits and declarations to the Court; (6) making patently false statements to the Court; (7) withholding relevant documents; (8) failing to fulfill discovery obligations; and (9) having ethically improper communications with, and access to, a supervisor-level employee of LIBI.

Troy has caused plaintiffs to sign and submit to the Court sworn documents that they could not read without providing them written translations in their native language of Mandarin Chinese. Troy has also failed to produce documents that defendants have requested. What's worse, plaintiffs, during their depositions, testified that Troy never even asked them to search for and provide the requested documents. Troy has flouted virtually every rule that allows for a fair and orderly litigation. His flagrant misconduct has placed defendants at a significant disadvantage in their ability to defend themselves against plaintiffs' claims in this litigation and is an affront to the Court. The Court ought not to permit it to continue for any longer.

For the reasons set forth below, defendants respectfully submit that the Court should dismiss the complaint pursuant to Rule 37 or, alternatively, disqualify Troy as counsel for plaintiffs, refer Troy to the Chief Judge for disciplinary action, and grant such other and further relief as the Court deems just and proper.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### I.  The Parties

LIBI is a two-year business college that offers a variety of certificate and associate degree programs at its three campuses located in Flushing, Commack, and New York City (ECF No. 41 ¶¶ 21–22). Plaintiffs are three current and two former employees in the building maintenance department at LIBI's Flushing campus (*Id.* ¶¶ 15–19, 60, 70, 81, 90, 100). Monica is the President of LIBI and is involved in the administration and operations of all three of LIBI's campuses (*Id.* ¶

33). William is a supervisor in the building maintenance department at LIBI's Flushing campus. (*Id.* ¶ 37).

## II.  Nature of the Case and Procedural History

Plaintiffs' claims in this case fall into two categories: (1) allegations of overtime violations under the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"); and (2) allegations of discrimination based on race and, as to one plaintiff, age under a variety of state and federal statutes. Defendants moved to dismiss portions of the second amended complaint (ECF Nos. 54–55). That motion was argued and submitted in February 2016, but it has not yet been decided.

Troy and his law firm, Troy Law, represent the five named plaintiffs in this case. Plaintiffs have moved for an order seeking conditional certification of a collective action under the Fair Labor Standards Act (the "FLSA") (ECF Nos. 56–58), hoping to include as potential opt-in plaintiffs all of LIBI's non-exempt, hourly employees at all three of its locations. Like defendants' motion to dismiss, plaintiffs' conditional certification motion was argued and submitted in February 2016, but it has not yet been decided.

Before plaintiffs filed their motion seeking conditional certification, but after the deadline to add parties under the Court's scheduling order dated August 18, 2015 (ECF No. 25), plaintiffs purported to file a consent form for Huan Yu ("Hazel"), the mid-level supervisor in the maintenance department at LIBI's Flushing campus (ECF No. 39). Defendants immediately objected to Hazel's attempt to join the lawsuit, pointing out that she is an exempt supervisor and is not entitled to overtime compensation under the FLSA or the NYLL (ECF No. 40). Plaintiffs have since submitted a letter motion seeking a determination that Hazel is a plaintiff in this action (ECF No. 96), which defendants promptly opposed (ECF No. 97). The Court, however, has not yet ruled on plaintiffs' motion, leaving unchanged Hazel's status as a non-party in this case.

### III. Instances of Troy's Misconduct that Warrant Disqualification

Troy has committed a number of different violations during the pendency of this case, ranging in severity. The smaller violations include Troy's abject inability to abide by the deadlines ordered by this Court, which defendants have on several occasions been forced to bring to the Court's attention.[1] The larger violations include material misrepresentations made to defendants' counsel and the Court concerning a non-attorney's appearance for plaintiffs entered on the record during a court conference (ECF No. 42) and Troy's involvement in preparing and filing charges with the National Labor Relations Board on behalf of plaintiffs in January 2016 (Aloe Decl. ¶ 2, Ex. A).

All of Troy's violations impugn his overall fitness to practice law and have prejudiced defendants' ability to defend themselves in this matter. However, these earlier violations pale in comparison to more recent revelations concerning Troy's misconduct in this case, which should leave the Court with no doubts that, unless Troy is disqualified as counsel for plaintiffs, there will be a significant risk of trial taint and prejudice to defendants.

---

[1] There are several instances for defendants to choose from here. Some of the more glaring examples include: (1) plaintiffs' response to defendants' pre-motion letter seeking to dismiss portions of the first amended complaint, which plaintiffs submitted 39 days late (ECF No. 29); (2) plaintiffs' failure to timely file a second amended complaint by September 23, 2016, following the Court's dismissal of portions of the first amended complaint (ECF Nos. 35, 37); (3) plaintiffs' attempt to add Hazel as a plaintiff three weeks after the deadline set by the Court's scheduling order (ECF Nos. 39, 40); (4) plaintiffs' failure to serve its discovery requests until eighteen days after the deadline set by the Court's scheduling order (ECF No. 43); and (4) plaintiffs' failure to send a letter outlining purported discovery deficiencies and Troy's unpreparedness to discuss any such deficiencies during a Court-ordered meet and confer session held at the courthouse (ECF No. 76).

### A.  Attempt to Engage in Ex Parte Discovery

On May 10, 2016, defendants learned that Troy, acting on behalf of plaintiffs, caused subpoenas to be served on Eddie Razzo and Beatriz Lopez, both non-parties who worked for LIBI briefly from the end of 2014 to the beginning of 2015 (ECF No. 84). The subpoenas were purportedly served sometime after May 6, 2016—the date on the check supplied for witness fees— and directed the witnesses to appear at Troy Law's s offices to testify at depositions scheduled for May 12, 2016 (ECF No. 84-1). Troy never served defendants' counsel with copies of these subpoenas. Indeed, defendants only came to learn about the subpoenas after being contacted directly by the non-party witnesses. Defendants immediately submitted a motion seeking sanctions against plaintiffs and Troy for attempting to engage in ex parte discovery (ECF No. 84).[2] Troy responded on May 17, 2016, claiming that the subpoenas were served on the non-parties inadvertently (ECF No. 93). The Court has not yet ruled on defendants' sanction motions, but the misconduct underlying that motion bears on this motion seeking disqualification, as it represents just one of many discovery-related transgressions that defendants have uncovered to date.

### B.  Failure to Fulfill Discovery Obligations

In their initial discovery requests to plaintiffs, which were served on November 9, 2015, defendants made a simple request for the following:

> All documents concerning communications of any sort (including, without limitation, emails, text messages, WeChat messages, and messages sent using any other computer, mobile, or social media service/application) that any of Plaintiffs sent to, or received from, any person (including, without limitation, communications with each other or any other person at LIBI or any friends or family members) concerning Plaintiffs' employment at LIBI or any of Defendants.

---

[2] Defendants had previously moved for sanctions against plaintiffs and Troy just a few weeks earlier for their failure to appear for depositions (ECF No. 78). The Court granted that motion by a docket order dated April 26, 2016 (Aloe Decl., Ex. B).

In response to this request, plaintiffs lodged baseless objections claiming that the request was overbroad, unduly burdensome, and an invasion of their privacy. The parties' dispute over this request was ultimately submitted to the Court in a joint letter dated March 16, 2016 (ECF No. 76). Following a conference held on March 29, 2016, the Court entered an order overruling plaintiffs' objections and directing plaintiffs to produce responses to this request no later than April 12, 2016 (ECF No. 77).

By letter from Troy dated April 12, 2016, plaintiffs responded to this request by stating that they do not have any responsive documents: "Plaintiffs does not use any other electronical means to communicate with each other or any other person at LIBI or any friends of family members concerning Plaintiffs' employment at LIBI or any of Defendants. Accordingly, Plaintiffs does not have in their possession, custody, or control of such documents for Plaintiffs other than those already produced" (Aloe Decl., Ex. C). Troy repeated this contention in plaintiffs' response to defendants' first motion for sanctions based on plaintiffs' "busted depositions," specifically stating that he "asked Plaintiffs about their communications regarding their employment using any means and they stated that they did not communicate about their employment with anyone using any electronical means" (ECF No. 79).

As it turns out, Troy's statements to defendants' counsel and the Court were completely false.[3] At least one plaintiff did have documents responsive to this request, but Troy never bothered to ask plaintiffs about this specific request. Indeed, plaintiffs testified during their depositions that neither Troy nor anyone else from Troy Law ever asked them if they had any LIBI-related communications—defendants' counsel was the first one to ask (Aloe Decl., Ex. D). Defendants

---

[3] If plaintiffs truly did not have any documents responsive to this request, then there would have been no reason for plaintiffs to object to defendants' request for four months.

have no way of knowing how many other of their discovery requests were handled in a similar fashion, but they seriously doubt that this is the only one.

### C.  False Statements Submitted to the Court

All five plaintiffs submitted affidavits in support of their motion seeking conditional certification of collective action under the FLSA (ECF Nos. 58-2–58-6). The affidavits were essentially identical, each containing a closing paragraph that stated as follows: "This document has been translated to me in my native language of Mandarin Chinese, and I fully comprehend the contents."

Defendants objected to the affidavits under Rules 604 and 901 of the Federal Rules of Evidence, arguing that they were not properly authenticated because they lacked certified translations (ECF No. 66 at 17–18). In response, Troy submitted a sworn declaration stating that he is a "native Chinese speaker and fluent in English as well" and that he personally "translated for [plaintiffs] from English to Chinese and vice versa in order to assist them with preparing affirmations in support of motion to conditional certification of collective action" (ECF No. 62 ¶¶ 2–3).

During plaintiffs' depositions held on May 18 and 19, 2016, counsel for defendants presented each plaintiff with a copy of his or her affidavit submitted in support of the motion seeking conditional certification to inquire whether each was familiar with, and could verify the accuracy of, the documents they had signed under oath. Plaintiffs all testified that they could not read the English language affidavits and that they were not provided written translations in Mandarin Chinese when they signed. Only one plaintiff, Zi Qiang Lu, testified that he had the document read to him line by line in Mandarin Chinese. The other four plaintiffs were merely told about the document, and they signed it solely because they trusted Troy and followed his instructions (Aloe Decl., Ex. E).

Plaintiffs' Trust in Troy was misplaced. Indeed, one the plaintiffs, Youxing Zhao, ended up signing an affidavit stating that he worked more than ten hours in a single day on many occasions, when in fact he never once worked more than ten hours in a single day.

Importantly, not one plaintiff testified that Troy himself translated the affidavits. On the contrary, they all testified that some unidentified translator from Troy Law—they could not identify whom it was or even whether the translator was male or female—presented them with the affidavits to sign. The declaration that Troy submitted in further support of plaintiffs' motion seeking conditional certification was blatantly false.

### D.  Inappropriate Communications with Hazel

As noted above, Hazel is the mid-level supervisor in the maintenance department at LIBI's Flushing campus. Although plaintiffs contend that Hazel was not treated like a supervisor-level employee, defendants surely did not see things that way. In May 2015, approximately one month after this case was commenced, counsel for defendants met with Hazel to discuss her supervisory role in the building and maintenance department and to investigate the department's policies and practices, as they related to the claims asserted in the original complaint (Aloe Decl. ¶ 7). At the end of that meeting, Hazel submitted a sworn statement stating that she prepared weekly schedules and bi-weekly payroll reports for the employees in the department (Aloe Decl. ¶ 7, Ex. F).

On November 7, 2015, plaintiffs purported to file a consent form from Hazel seeking to join this action as a plaintiff (ECF No. 39). Plaintiffs later submitted two affidavits from Hazel in support of their motion seeking conditional certification of a FLSA collective action, through which Hazel confirmed her title of "Supply Manager" and stated that she received a salary in excess of $35,000 and that her job duties included tracking inventory and preparing payroll reports for plaintiffs and other employees in the building and maintenance department at LIBI's Flushing campus (ECF Nos. 58-7, 71). Defendants contend that these facts lead to the inescapable

8

conclusion that Hazel is an exempt manager who is not entitled to overtime under the FLSA and cannot joint this action as a plaintiff.

The issue of Hazel's involvement in this case did not resurface until May 17, 2016, when Troy advised defendants' counsel that he intended for Hazel to attend plaintiffs' depositions on May 18 and 19, 2016. Defendants' counsel immediately objected and pointed out that, as a non-party, Hazel had no right to attend the depositions, the depositions were confidential under the parties' confidentiality agreement, and Troy was prohibited with speaking with Hazel under Rule 4.2 of the Rules of Professional Conduct because she was employed by LIBI in a supervisor-level position and had already met with defendants' counsel to discuss this matter. Troy responded by reiterating plaintiffs' incorrect contention that Hazel is a party to this action and by stating that Hazel was a client of his Troy Law, though he refused to produce the engagement/retention letter between Hazel and his firm (Aloe Decl., Ex. G).[4]

As plaintiffs' depositions were scheduled to begin the next day, the parties brought this issue to the Court's attention by defendants making an emergency application for a protective order by telephone. The Court entered an order dated May 17, 2016, granting defendants' application, barring Hazel from attending the depositions, and noting the potential ethical implications created by Troy's communications with her (ECF No. 89). Plaintiffs made an emergency appeal of the Court's order, and the District Judge affirmed (Aloe Decl., Ex. H). Plaintiffs then sought reconsideration of the order (ECF No. 91), which defendants opposed (ECF No. 92), and the Court ultimately denied by a docket order dated May 19, 2016. After Troy and plaintiffs had made three

---

[4] Up until this point, plaintiffs were proceeding as if Hazel were not a plaintiff in this action. Indeed, plaintiffs did not produce any documents or interrogatory responses from Hazel in response to defendants' document requests. Nor did Troy or anyone else from Troy Law ever enter a notice of appearance on behalf of Hazel.

desperate attempts to have Hazel attend their depositions in as many days, it became clear to defendants that Hazel was actively—albeit surreptitiously—involved in inappropriate communications with Troy concerning this case.

Hazel's employment with LIBI was terminated on May 31, 2016, due to mounting evidence of instances of her misconduct and deficient job performance (Aloe Decl., Ex. I). On the day Hazel was terminated, defendants learned that Hazel had three personal USB drives containing documents that she had copied from LIBI's computer system. Before Hazel was escorted away from LIBI's premises, the drives were briefly reviewed, and the files that were identified as LIBI-related were deleted (Aloe Decl., Ex. J). There was no way for LIBI to ensure at that time that all of its files were removed from the drives or that Hazel had not previously disseminated other LIBI files before deleting them from the drives herself.

Counsel for the parties raised this issue with the Court during a telephonic status conference held on June 1, 2016. The Court ordered that the Hazel's deposition would take place on June 9, 2016, and instructed counsel for the parties to be prepared to discuss all issues concerning Hazel at the in-person status conference scheduled to take place on June 13, 2016 (ECF No. 99).

At the June 13, 2016, status conference—at which Troy did not appear—the Court ordered that Hazel would have to produce the USB drives for a forensic examination by June 17, 2016, and that her deposition would be continued on June 22, 2016 (ECF No. 100). Notwithstanding that an attorney from Troy Law agreed to this arrangement during the status conference, Troy submitted a letter motion on June 15, 2016, seeking a protective order to prevent the forensic analysis from taking place outside of Hazel's presence (ECF No. 101). Defendants opposed the motion that same day (ECF No. 102), and the Court denied the motion by a docket order dated June 21, 2016 (Aloe Decl., Ex. K).

Defendants did not receive Hazel's USB drives until June 20, 2016 (ECF No. 104)—three days after the deadline set by the Court. The drives were immediately sent to The Computer Forensics Practice, LLC, a third-party forensics firm, for an expedited analysis, the preliminary results of which were received on June 21, 2016 (Aloe Decl., Ex. L).[5] The preliminary analysis showed that Hazel's USB drives at times contained thousands of LIBI's files, ranging from Excel spreadsheets containing employee work schedules and payroll reports to pictures of students, faculty, and staff used to create school identification cards. Some of the files had been deleted, but many had not. Defendants were most troubled by the fact that they had no way of knowing the other computers to which these files may have been copied and to whom they may have been sent. It was clear, though, that Hazel had access to LIBI's computer systems and had been copying documents to her USB drives long before she claims she first became involved with Troy in November 2015, and that she continued to horde LIBI documents and information on her personal USB drives up until her termination on May 31, 2016.

Defendants received from The Computer Forensics Practice, LLC, the actual files from Hazel's USB drives—those that were recoverable, at least—on June 24, 2016 (Aloe Decl., Ex. M). Counsel for defendants' review of those drives confirmed the preliminary analysis and established that Hazel had a tremendous amount of LIBI documents and information on her personal USB drives, many of them relevant to this case.

Defendants also analyzed Hazel's LIBI email account and discovered that she had forwarded dozen of work emails—some relating to her, others relating to plaintiffs—from her work email account to her personal email account (Aloe Decl., Ex. N). These emails began as early

---

[5] The preliminary analysis did not provide the actual files contained on, or recovered from, the USB drives. Rather, the analysis consisted of several spreadsheets providing information such as file names, types, sizes, access dates, deletion dates, etc.

11

as September 2015, nearly two months before Hazel claims to have sought out Troy to attempt to join this lawsuit (Aloe Decl. ¶ 15).

## ARGUMENT

**I.     The Complaint Should Be Dismissed Based on Plaintiffs' Discovery Violations**

Rule 37 of the Federal Rules of Civil Procedure authorizes the Court to dismiss the complaint in this action based on plaintiffs' deliberate violations of the general rules governing discovery and a specific order from the Court compelling discovery. *See* FED. R. CIV. P. 37(b)(2)(A)(v), (d)(3); *Carter v. Jablonsky*, 121 F. App'x 888, 889 (2d Cir. 2005); *Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 F. App'x 107, 110 (2d Cir. 2001); *Abreu v. City of New York*, 208 F.R.D. 526, 530 (S.D.N.Y. 2002) (stating that dismissal under Rule 37 is appropriate where the discovery noncompliance is willful or in bad faith). "Under Rule 37, incomplete disclosures or responses are the equivalent of a total failure to disclose or respond." *Abreu*, 208 F.R.D. at 530.

Defendants requested production of all of plaintiffs' LIBI-related communications in November 2015. Citing baseless objections, plaintiffs withheld responsive documents, ultimately forcing defendants to submit this issue to the Court in a joint discovery letter (ECF No. 76). The Court held a conference on March 29, 2016, and later that day entered an order directing plaintiffs to produce documents responsive to this request no later than April 12, 2016 (ECF No. 77). Plaintiffs did not produce responsive documents by the deadline. Instead, Troy sent a letter claiming—for the first time—that plaintiffs did not have any responsive documents (Aloe Decl., Ex. C). Troy repeated this representation—this time directly to the Court—in plaintiffs' response to defendants' first motion for sanctions based on plaintiffs' "busted depositions" (ECF No. 79). Troy's statements to counsel for defendants and the Court turned out to be completely false.

Plaintiffs did plaintiffs have responsive documents, but Troy never even asked plaintiffs to search for or produce the documents (Aloe Decl., Ex. D).

The refusal by plaintiffs and their counsel to engage in discovery in good faith warrants dismissal under both Rule 37(b)(2)(A)(v) and (d)(3). The first provision allows for dismissal where a party "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A)(v). The second provision allows for dismissal for failing to serve answers to interrogatories and documents requests properly served under Rule 33 and Rule 34, respectively. FED. R. CIV. P. 37(d)(3). Here, plaintiffs and their counsel refused to respond to the defendants' request for plaintiffs' LIBI-related six months after it was properly served. After being ordered by the Court to respond, plaintiffs and their counsel lied about not having responsive documents. Plaintiffs and their counsel did not even attempt to search for documents responsive to defendants' request, demonstrating a stunning disrespect for the Court's authority and making this discovery violation all the more egregious.

Plaintiffs and their counsel claimed to not have documents responsive to several of defendants' discovery requests. Based on their conduct with respect to the request for LIBI-related communications, defendants and this Court have no way of knowing whether plaintiffs have made full disclosure in this case.[6] Plaintiffs should not be permitted to proceed with claims seeking affirmative relief from defendants when they are not willing to participate in the discovery process in good faith. Defendants respectfully submit that plaintiffs' discovery-related misconduct warrants dismissal of this action pursuant to Rule 37.

---

[6] Defendants, for their part, have serious doubts that plaintiffs have made full and accurate disclosures in discovery.

## II.   Alternatively, Plaintiffs' Counsel Should Be Disqualified Because His Persistent Violations of the Rules Governing Discovery and Ethics Pose a Significant Risk of Trial Taint

If the Court chooses not to dismiss this action pursuant to Rule 37, then, at the very least, it should dismiss Troy and his firm, Troy Law, as counsel for plaintiffs in this case, based on his complete disregard for the rules and procedures that govern the practice of law as well as the authority of this Court. "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Indeed, "[t]he district court bears the responsibility for the supervision of the members of its bar." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

The court's task on a motion to disqualify counsel is "to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973). "This balance is essential if the public's trust in the integrity of the Bar is to be preserved." *Id.* at 565. Keeping this balance in mind, courts grant motions seeking disqualification where an ethical violation committed by a party's counsel "poses a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004) ("When deciding a motion to disqualify an attorney, federal district courts in New York consider various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the New York Code of Professional Responsibility."). The decision to disqualify is committed to the Court's discretion; however, "in the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull*, 513 F.2d at 571.

Troy's misconduct in this case has been so pervasive, so persistent, and so prejudicial to defendants that there can be no doubt that, barring dismissal of the complaint, his disqualification as counsel for plaintiffs is the only possible way to mitigate the significant risk of trial taint that defendants now face.

## A.  Troy's Misconduct Warrants Disqualification

In the fifteen months that this case has been pending,[7] defendants have identified numerous instances of misconduct committed by Troy. Individually, these instances demonstrate that Troy has a startling misunderstanding of—or more likely deliberate disregard for—the rules and procedures that govern practice in this Court. In the aggregate, these instances call into question whether Troy is fit to practice law at all. Either way, these instances demonstrate that there is a significant risk that defendants will not be afforded a fair trial in this case if Troy is permitted to proceed as counsel for plaintiffs. For the reasons set forth below, Troy should be disqualified.

### i.  Discovery Violations

Troy attempted to engage in ex parte discovery of non-parties by serving those non-parties with depositions subpoenas without providing any notice to counsel for defendants in clear violation of Federal Rules of Civil Procedure 30 and 45.[8] In *Matter of Beiny*, 32 A.D.2d 190, 522 N.Y.S.2d 511 (1st Dep't 1987), the First Department held that disqualification of Sullivan & Cromwell was appropriate where it failed to give notice of a subpoena duces tecum and notice of deposition to opposing parties, reasoning as follows:

---

[7] One of the named plaintiffs commenced this case on April 18, 2015 (ECF No. 1).

[8] Rule 30(b)(1) explicitly provides that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." FED. R. CIV. P. 30(b)(1). Similarly, Rule 45(a)(4) provides that,"[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party." FED. R. CIV. P. 45(a)(4).

> To have imposed a sanction short of disqualification in this case would have sent a very dangerous message to the Bar. We would in effect have said, you may ignore the rules of discovery and the ethical precepts governing attorney conduct, and thereby, elicit the disclosure of confidential material highly relevant to your case, and if by chance you are discovered and your adversary has the resolve and resources to pursue the matter, we will do no more than suppress the improperly acquired material and require you to pursue discovery in a proper manner. This is to say we would do nothing to sanction the misconduct brought to our attention. The offending lawyer or firm is not punished in any way by being directed not to rely on improperly obtained information and to henceforth obey rules which should have been observed all along; he is simply held to the standard applicable to all attorneys. He may, moreover, be in a better position than if he had obeyed the rules because although the improperly acquired materials are suppressed, he will inevitably retain information therefrom which he will be able to use to guide his conduct of the litigation in ways no court can effectively regulate.

*Matter of Beiny*, 32 A.D.2d at 209, 522 N.Y.S.2d at 523–24.

What's worse, this was not Troy's first (or last) discovery violation in this case. Indeed, the Court had ordered sanctions against Troy and plaintiffs for plaintiffs' "busted deposition" less than two weeks before Troy had caused the subpoenas to be served on the non-parties without notice to defendants' counsel (Aloe Decl., Ex. B). Moreover, as noted above, Troy represented to the Court and defendants' counsel that he had asked plaintiffs whether they had any documents responsive to defendants' request for LIBI-related communications and that they told him they had none (ECF No. 79). However, plaintiffs testified during their depositions that neither Troy nor anyone else from Troy Law ever asked whether they had any such communications (Aloe Decl., Ex. D).

Rule 3.3(f)(3) of the Rules of Professional Conduct prohibits lawyers from "intentionally or habitually violat[ing] any established rule of procedure or evidence." The Federal Rules of Civil Procedure surely fall within the purview of Rule 3.3(f). Troy's conduct during discovery has demonstrated an unabashed willingness to break the rules governing discovery and withhold from defendants documents that are directly relevant to the claims and defenses at issue in this case. There can be no level playing field where one side refuses to abide by the rules that govern the

game. Here, the only way to ensure a level playing field at the trial in this matter is to disqualify Troy as counsel for plaintiffs.

### ii.  Misrepresentations to the Court

Rule 3.3(a)(1) of the Rules of Professional Conduct provides that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Troy has directly violated this rule on no fewer than three occasions, justifying, at the very least, his disqualification as plaintiffs' counsel in this case.[9] *See Gordon v. Dadante*, No. 1:05-cv-2726, 2009 WL 2732827, at *8 (N.D. Ohio Aug. 26, 2009) ("Legal precedent considering the disqualification of an attorney who has not been honest with the Court is, perhaps fortunately, somewhat sparse. Nonetheless, it is clear that a district court properly exercises its inherent power when it uses that power to disqualify an attorney who has made material misrepresentations to the Court.").

First, Troy represented to the Court that he had nothing to with—and indeed knew nothing about—the charges plaintiffs filed with the National Labor Relations Board in January 2016 (Aloe Decl. ¶ 2). In March 2016, defendants obtained copies of the charges filed. Lo and behold, Troy not only knew about the charges, he signed and filed them on behalf of plaintiffs (Aloe Decl., Ex. A). Troy did not bring this falsehood to the Court's attention himself, instead choosing to wait and see whether defendants would figure it out and bring it to the Court's attention. When defendants did so, Troy offered an excuse and an apology, but not a legitimate explanation.

---

[9] Troy's blatant misrepresentations to the Court may justify disbarment, a punishment far worse than disqualification. *See In re Fagan*, 58 A.D.3d 260, 266, 869 N.Y.S.2d 417, 421 (1st Dep't 2008) ("Disbarment is an appropriate sanction for attorneys who, like respondent, have made deliberate misrepresentations to a court."). However, the issue of what other discipline might be appropriate to address Troy's misconduct is not presently before this Court.

Second, as noted above, Troy never asked plaintiffs if they had any LIBI-related communications responsive to defendants' document request (Aloe Decl., Ex. D). However, he represented to the Court that he did in plaintiffs' response to defendants' first motion for sanctions based on plaintiffs' "busted depositions" (ECF No. 79). Another blatant lie by Troy to the Court uncovered by defendants.

Third, as noted above, Troy submitted a sworn declaration stating that he translated affidavits that were signed plaintiff and submitted to the Court in support of plaintiffs' motion seeking conditional certification of a collective action under the FLSA (ECF No. 62 ¶¶ 2–3). Plaintiffs testified during their depositions that Troy did not translate the affidavits from English to Mandarin Chinese (Aloe Decl., Ex. E). Indeed, only one plaintiffs claims to have had the affidavit translated verbatim. Moreover, another plaintiff, Youxing Zhao, who only worked part-time for LIBI, stated in his sworn affidavit that he had worked more than ten hours in a single day on many occasions, when he had never done so even once.

As the false affidavits that plaintiffs signed were submitted as evidence in support of their motion for conditional certification, this misrepresentation from Troy also implicates Rule 3.3(a)(3 of the Rules of Professional Conduct, which provides that "[a] lawyer shall not knowingly offer or use evidence that the lawyer knows to be false."

These are only three lies from Troy that defendants have evidence to demonstrate. There very well may be untold more. The only way to ensure that defendants are not prejudiced by these and other material misrepresentations made by Troy during the course of this case is to disqualify him and Troy Law as counsel for plaintiffs.

### iii. Improper Communications with Hazel

Under Rule 4.2 of the Rules of Professional Conduct, "[i]n representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation

with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law." In *Niesig v. Team I*, 76 N.Y.2d 363 (1990), the New York Court of Appeals set forth the following definition to govern which employees constitute a "party" in the case of a corporate defendant for the purposes of the predecessor to current Rule 4.2: "[C]orporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel." *Niesig*, 76 N.Y.2d at 374.

Troy should have known that, based on her supervisory role at LIBI, Hazel was a "party" for the purposes of the no-contact rule under *Niesig*. Indeed, defendants' counsel had met with Hazel in May 2015—approximately one month after commencement of this action—to discuss the department's policies and practices as they related to the claims asserted in the original complaint (Aloe Decl. ¶ 7). If Troy did immediately know about, or fully understand, Hazel's role at LIBI, then he was ethically obligated to cease his communications with her once he learned the extent of her supervisory responsibilities and her prior contact with defendants' counsel concerning the claims in this case.

Hazel was not merely a supervisory employee with some tangential relationship to the issues in this case. As Hazel herself has conceded on several occassions, she was the one who prepared the bi-weekly payroll calculations for plaintiffs, which would include the calculations for overtime pay (Aloe Decl., Ex. F ¶ 2; ECF No. 58-7 ¶10; ECF No. 71 ¶ 18). Accordingly, if there were any overtime violations, Hazel was directly involved. While LIBI, as a corporation, may have responsibility for the acts of its supervisory employees undertaken in the course of their employment, it is utterly inappropriate for an adverse lawyer to be communicating with such

19

supervisory employees. Ethical lawyers understand this, and they turn away clients for whom representation would present such a conflict—but not Troy. He has instead sought to exploit the situation to the fullest.[10]

To date, Troy has refused to end his involvement with Hazel, claiming that she is his client and a party to this action (Aloe Affirm., Ex. G).[11] Troy has used his improper relationship with Hazel to ply her for documents and information concerning LIBI that she had absolutely no authority to share and that this Court has ruled plaintiffs are not entitled to receive—namely, documents and information concerning employees that do not work in the building and maintenance department at LIBI's Flushing campus (e.g., exempt faculty members). Even worse, in May 2016, defendants discovered that Hazel had stored on three personal USB drives thousands of documents taken from LIBI's computer systems (Aloe Decl., Ex. J). Although defendants were, through use of a forensic computer expert, able to retrieve some of the documents stored on Hazel's drives as of the end of May 2016, defendants have no way of knowing what other documents were stored on those drives before that time or, more troublingly, what documents Hazel provided to Troy. It is undisputed that Troy was communicating with Hazel as early as November 2015, providing him unfettered access to Hazel—and the treasure trove of LIBI documents and information to which she had access—for at least six months, during which time the parties were engaged in hotly-contested discovery concerning the proper scope of discovery. It is also indisputable that Hazel had been emailing documents and information from her LIBI work account

---

[10] It goes without saying that, even assuming that Hazel walked into Troy's office seeking representation, he could have declined to represent her and referred her to another lawyer.

[11] To be sure, Hazel is not mentioned anywhere in the second amended complaint, and plaintiffs have not sought permission to amend their pleading or join Hazel as a party to this action, other than by filing Hazel's defective consent form in November 2015.

to the her personal account beginning as early as September 2015 and not ending until her termination on May 31, 2016 (Aloe Decl., Ex. N).[12]

Troy's failure to identify Hazel as a purported client of Troy Law until May 2016 also runs afoul of Rule 3.3(e) of the Rules of Professional Conduct, which provides that, "[i]n presenting a matter to a tribunal, a lawyer shall disclose, unless privileged or irrelevant, the identities of the clients the lawyer represents and of the persons who employed the lawyer." If Hazel in fact retained Troy to represent her in November 2015, as she testified she did during her deposition, then at that time Troy was required to advise defendants and the Court by filing a notice of appearance on her behalf. Troy did not do that. Instead, he filed a defective consent to join form (ECF No. 39), which did nothing but indicate plaintiffs' belief that Hazel should be a proposed opt-in plaintiff in the event that the Court granted their motion for conditional certification of a FLSA collective action. Nothing in that form states or even suggests that Troy was also her lawyer. Had Troy not concealed his purported attorney-client relationship with Hazel until May 2016, defendants would have brought this issue to the Court's attention sooner—before the parties entered the heart of the discovery period—and perhaps could have minimized the harm done. Troy deprived defendants of that opportunity by withholding this information from defendants and the Court, in violation Rule 3.3(e).

The prejudice Troy has caused defendants cannot be understated. It is one thing to have an uncooperative employee during a time of crisis, but it is quite another to have that employee working directly against your interests with counsel for your adversaries. There is simply no way

---

[12] Hazel in fact sent 32 emails from her LIBI work account to her personal account on the evening of her termination, after she had been escorted away from LIBI's premises.

to ensure that defendants will be afforded a fair trial unless Troy is prohibited from proceeding as counsel for plaintiffs in this case.

### B.  Troy's Misconduct Is Not Limited to this Case

This is not the only motion for disqualification Troy has faced. Less than one month ago, by an order dated June 20, 2016, the Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York, granted a motion to disqualify Troy made by the defendants—a sushi restaurant and two of its principals—in a FLSA action commenced in December 2015 (Aloe Decl., Ex. O).

In that case, captioned *Zheng* et al. *v. Kobe Sushi Japanese Cuisine* et al. (Case No. 15-cv-10125-AKH), Troy commenced a wage and hour lawsuit against the defendants on December 30, 2015. The following week, Troy sent the defendants a direct solicitation letter dated January 6, 2016, advising them about the lawsuit and stating that Troy Law has experience defending FLSA case and could represent them in the action. As Troy had sent letter to the defendants before serving the complaint, the defendants were unaware that Troy was in fact representing the plaintiffs in the action against them. One of the individual defendants called Troy Law's office in response to the letter and spoke with Troy about the substance of the case, including potential defenses and strategies. The call went on for several minutes before Troy claim that he realized he was counsel for the plaintiffs in that case, after which he ended the call.

Judge Hellerstein found that, irrespective of whether or not Troy had any improper intent, "Troy learned relevant and useful information from Mr. Xing and, should he remain in the case, would be acting prejudicially to one or the other of his adverse clients, or both." Judge Hellerstein further found that the conversation that resulted from Troy's direct solicitation letter posed a significant risk of trial taint, one that could remedied only by disqualification.

The facts in *Zheng*, which Judge Hellerstein thought sufficient to warrant disqualification of Troy as counsel for the plaintiffs, pale in comparison to the facts of this case. Here, Troy did not inadvertently or accidentally come to speak with Hazel, a supervisor-level employee whom plaintiffs could have named as a defendant in this action, as she was responsible for supervising plaintiffs' work and preparing plaintiffs' work schedules and payroll reports. Moreover, Troy knew exactly who Hazel was when (as Hazel tells it, at least) she sought him out in November 2015 seeking to join this action. Here, as in *Zheng*, Troy's disqualification is the only appropriate course of action.

## III.    The Court Should Refer Troy Law to the Chief Judge for Disciplinary Action

Local Civil Rule 1.5 sets forth the policies and procedures governing the Committee on Grievances for the Eastern District of New York.[13] Pursuant to Local Civil Rule 1.5(b), attorneys may be disciplined for, among other things, having "an infirmity which prevents the attorney for engaging in the practice of law" or engaging "in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York." Local Civil Rule 1.5(f) specifically authorizes district judges and magistrate judges to "refer any matter to the Chief Judge for referral to the Committee on Grievances to consider the imposition of discipline or other relief pursuant to this rule." *See Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc.*, No. 11-cv-3252 (MKB), 2013 WL 2237542, at *6 (E.D.N.Y. May 21, 2013).

---

[13] The Committee on Grievances for the Eastern District of New York is also referred to as the Attorney Disciplinary Committee. At present, the Attorney Disciplinary Committee for the United States District Court for the Easter District of New York is composed of District Judges Brian M. Cogan (Chair), Arthur D. Spatt, Nina Gerson, Roslynn R. Mauskopf, and Joseph F. Bianco. *See Attorney Disciplinary Committee*, UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK, https://www.nyed.uscourts.gov/nodeblock/attorney-disciplinary-committee.

As set forth above, defendants have demonstrated that Troy has committed numerous violations of the rules that govern ethics and the practice of law in New York State and in this Court. Defendants have also demonstrated that Troy's inappropriate conduct is not isolated to this case, but ostensibly permeates his entire practice. Defendants respectfully submit that a disciplinary referral to the Chief Judge is necessary and proper here to protect the administration of justice in this Court as well as the interests of Troy's current and potential future clients.

An attorney does not serve his or her client's interests by breaking rules. Plaintiffs in this case know this all too well, as Troy has already caused them to be sanctioned individually for failing to appear for their depositions. Appropriate disciplinary action may protect prospective litigants from suffering the same fate at Troy's hands in the future.

## CONCLUSION

For the reasons set forth above, defendants respectfully submit that the Court should dismiss the complaint pursuant to Rule 37 or, alternatively, disqualify Troy as counsel for plaintiffs, refer Troy to the Chief Judge for disciplinary action, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
       July 15, 2016

                      By: _____
                            Paul H. Aloe
                            David N. Saponara
                            KUDMAN TRACHTEN ALOE LLP
                            350 Fifth Avenue, 68th Floor
                            New York, New York 10118
                            Tel: (212) 868-1010
                            paloe@kudmalaw.com
                            dsaponara@kudmanlaw.com

                            *Attorneys for Defendants*