Case 1:15-cv-02215-CBA-VMS Document 122 Filed 08/10/16 Page 1 of 14 PageID #: 1454

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 1 0 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHUN LAN GUAN, QIHUAI LIU, ZIQIANG LU, YOUXING ZHAO, and HUIDE ZHOU, on behalf of themselves and others similarly situated,

                        Plaintiffs,

-against-

LONG ISLAND BUSINESS INSTUTE, INC., MONICA FOOTE, and WILLIAM DANTIVA,

                        Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-2215 (CBA) (VMS)

**AMON, United States District Judge:**

Plaintiffs bring discrimination and labor law claims against defendants Long Island Business Institute, Inc. ("LIBI"); Monica Foote, the president of LIBI; and William Dantiva, the maintenance supervisor of LIBI's campus in Flushing, Queens. Defendants move to dismiss (1) all discrimination claims against defendant Foote, brought under 42 U.S.C. § 1981, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"); (2) the age-discrimination claim brought under the Age Discrimination in Employment Act of 1967 ("ADEA"); and (3) the race-discrimination claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). For the following reasons, the Court dismisses the ADEA claim, but not the discrimination claims against Foote or the Title VII claim.

## BACKGROUND

### I.    Race-Discrimination Allegations

Plaintiffs are current and former Chinese employees in the building-maintenance department at LIBI's campus in Flushing, Queens. Under defendant Dantiva's supervision, the maintenance department allegedly gave preferential treatment to the department's two Hispanic employees over its Chinese employees. (See D.E. # 41 ("Second Am. Compl.") ¶¶ 110–21.)

1

Specifically, Dantiva reduced plaintiffs' hours in order to increase Hispanic employees' hours, (id. ¶¶ 110–12); fired Chinese employees in order to replace them with Hispanic employees, (id. ¶¶ 112, 116); signed contracts with Hispanic employees, but not Chinese employees, (id. ¶¶ 114–15); "invalidated" Chinese employees' sick and vacation days, (id. ¶ 117); and gave a Hispanic employee a custom uniform, (id. ¶ 119). Dantiva called Hispanic employees "more diligent," "more efficient," and "better workers." (Id. ¶¶ 120–121.)

The discord in the maintenance department came to a head at a February 9, 2015, building-maintenance meeting called in response to a Chinese employee's wage-and-hour lawsuit. (Id. ¶ 122.) The meeting's purpose was to "underscore [the] rules to Chinese sanitation workers." (Id.) At the meeting, plaintiffs reported their concerns about the disparate treatment of Chinese employees. (Id. ¶ 135.) In response, Dantiva "interrogated" them about their involvement in the other wage-and-hour suit, (id. ¶ 137), and reclassified the maintenance employees in ways detrimental to the Chinese employees, (id. ¶¶ 123–26, 129, 133).

## II. Age-Discrimination Allegations

Plaintiff Zhao worked in the maintenance department until November 2014. Dantiva "never called Zhao by his name but called him 'Old Guy, White Hair.'" (Id. ¶ 178.) On November 19, 2014, Zhao requested sick leave for the next day and was denied. (Id. ¶ 181.) Then on November 26, 2014, Zhao was terminated and replaced by a younger Hispanic worker. (Id. ¶ 182.)

## III. Allegations against Defendant Foote

Plaintiffs allege that, as LIBI president, Foote "exercised substantial administrative control over all of [LIBI's] campus[es], holding the title of 'General Administration, President' of all three

campuses." (Id. ¶ 33.)[1]  Further, "all time off [and] vacation time requests of faculty and staff at [LIBI] must be submitted and approved by [Foote] before employees are allowed vacation time. . . . [Foote] has final authority over approving or denying time off requests." (Id. ¶¶ 34, 36.) "Monica Foote also directly supervise[s] the Sanitation department, including taking photos of the classrooms as proof of sanitation quality." (Id. ¶ 35.) Specifically, "[a]round or about July or August 2015, Monica Foote took pictures of the classroom right after class and before they were cleaned by Chinese sanitation workers to send to William Dantiva to [demonstrate] their lack of work ethic and in retaliation [for] their complaint against LIBI." (Id. ¶ 143.) Plaintiffs also allege that a school administrator attended the February 9 meeting on Foote's behalf. (Id. ¶¶ 127, 131–32.)

Finally, plaintiffs allege that Foote had a conversation with plaintiff Lu regarding his working conditions after Dantiva had assigned Lu to day shifts with heavier workloads in March 2015. (Id. ¶¶ 169, 172.) Plaintiffs allege that "when [Foote] talked with Lu about his working conditions, she said he was on tenterhooks. When asked whether his working conditions could change, Lu replied that they could not, because 'I am Chinese.'" (Id. ¶¶ 172–73.)

---

[1] Plaintiffs attach pages from LIBI's Employee Handbook, which describe the president's role to include "administer[ing] the policies that govern the college" and "coordinat[ing] all activities of each campus directly or through suitably selected designees." (D.E. # 60-1.) It is unclear what additional support this document lends to plaintiffs' claim that Foote as president held general administrative duties. Regardless, the Court may not consider documents outside the pleadings in deciding a 12(b)(6) motion to dismiss unless the documents are incorporated by reference into the complaint or the complaint relies heavily upon their terms and effect, rendering the documents integral to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "[L]imited references," however, "are insufficient to incorporate documents or exhibits into the complaint." Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008). Here, the document plaintiffs submit is not referenced at all in their complaint, nor are "the contents of the documents . . . necessary to the 'short and plain statement of the claim showing that [the plaintiffs were] entitled to relief,'" id. at 68 (quoting Fed. R. Civ. P. 8(a)(2)). Instead the documents "seem to have been used by the plaintiffs largely for the purpose of indicating that evidence existed to support the complaint's assertions." Id. This document is therefore not appropriately considered at this stage.

3

## IV. Procedural History

Plaintiff Guan sued LIBI and Foote for wage-and-hour violations on April 18, 2015. (D.E. # 1.) Defendants requested leave to move to dismiss the complaint, (D.E. # 13), and on June 26, 2015, Guan amended the complaint to add Liu, Lu, Zhou, and Zhao as plaintiffs and Dantiva as a defendant, (D.E. # 17). The amended complaint also added the discrimination claims. (Id.) That same day, each plaintiff filed a charge of discrimination with the EEOC. (See Second Am. Compl. ¶ 9.)

Defendants then requested leave to move to dismiss the amended complaint. (D.E. # 23.) At the pre-motion conference, the Court dismissed plaintiffs' Title VII and ADEA claims because plaintiffs had not received right-to-sue letters from the EEOC as required by 42 U.S.C. § 2000e-5(e)–(f) and 29 U.S.C. §§ 633(b), 626(d). (See D.E. dated Sept. 10, 2015.) The Court also granted plaintiffs leave to file a second amended complaint. (Id.)

Rather than file their second amended complaint, on September 23, 2015, plaintiffs sought leave from the Court to pursue their Title VII and ADEA claims because that day they had received their right-to-sue letters. (See D.E. # 35.) The Court permitted plaintiffs to include their Title VII and ADEA claims in their second amended complaint along with allegations setting forth their compliance with the statutory preconditions. (See D.E. dated Nov. 12, 2015.) Plaintiffs filed their second amended complaint on November 13, 2015. (See D.E. # 41.) The defendants then made the instant motion to dismiss certain claims. (See D.E. # 54.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts for "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the Court will not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," id., it must accept as true all material factual allegations alleged in the complaint and draw all reasonable inferences in plaintiffs' favor, see Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).

Discrimination claims brought under Title VII, § 1981, the ADEA, and NYSHRL are all analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015) (Title VII, § 1981, and NYSHRL); Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012) (ADEA). "The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). At the pleading stage, "the prima facie requirements are relaxed" and the plaintiff need only plausibly allege that he "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 307, 311 (2d Cir. 2015). The complaint "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but only "plausible support to a minimal inference of discriminatory motivation." Id. at 311.

Discrimination claims brought under the NYCHRL are analyzed under a different framework. The current NYCHRL is not "coextensive with its federal and state counterparts." Velazco v. Columbus Citizens Found., 778 F.3d 409, 410 (2d Cir. 2015) (per curiam). Instead, "interpretations of state and federal civil rights statutes can serve only as a floor below which the

[NYCHRL] cannot fall." Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 75 (2d Cir. 2015) (internal quotation marks and citations omitted). NYCHRL claims should be construed liberally in order to accomplish its uniquely broad and remedial purposes, and to that end courts analyze NYCHRL claims separately and independently from federal and state law claims. See id.

## DISCUSSION

### I. Discrimination Claims Against Foote

Defendants argue that plaintiffs fail to state a claim against Foote because they have not alleged Foote was personally involved in the discriminatory conduct. Each cause of action brought against Foote—§ 1981, NYSHRL,[2] and NYCHRL—requires the defendant's personal involvement. See Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004) (§ 1981); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (NYSHRL), abrogated on other grounds by Burlington Indus. Inc. v. Ellerth, 524 U.S. 742 (1998); Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (NYCHRL). A defendant is personally involved if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Littlejohn, 795 F.3d at 314 (quoting Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)). The Court must determine whether plaintiffs' allegations and the

---

[2] In addition to establishing liability under N.Y. Executive Law § 296(6) for individuals who actually participated in the conduct giving rise to the claim of discrimination, NYSHRL also creates individual liability for parties who can be said to constitute the plaintiff's employer under § 296(1). See Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 53 (2d Cir. 2014) (setting forth distinctions between § 296(1) and (6)). Although defendants argue that plaintiffs have not sufficiently alleged that Foote is an employer under § 296(1), that is not necessary if she was personally involved in discrimination under § 296(6). See Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 420 (E.D.N.Y. 2010) ("To be found liable under [§ 296(6)], an individual need not have supervisory or hiring and firing power . . . ." The Court therefore rejects this alternative ground for dismissing the NYSHRL claim.

reasonable inferences discernable from them make it plausible that Foote satisfies one of these theories of liability.

Three of the theories of personal involvement set forth in Littlejohn are inapplicable. First, plaintiffs do not allege that Foote directly discriminated against them: Foote did not herself reduce the plaintiffs' hours, increase their workload, or express a preference for Hispanic workers. Second, plaintiffs do not allege that the discriminatory conduct arose from an unconstitutional university policy that Foote implemented or tolerated. Third, plaintiffs do not allege that they filed a report or appeal to Foote describing the violations.

The only remaining means by which plaintiffs could allege Foote's personal involvement would be to allege that Foote "exhibited deliberate indifference" or was "grossly negligent in supervising subordinates." Littlejohn, 795 F.3d at 314. Foote would be deliberately indifferent if her "response to known discrimination '[was] clearly unreasonable in light of the known circumstances.'" Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999) (citing Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 648 (1999)). She would be grossly negligent if she "either knew or should have known of the events of which [plaintiffs] complain[]." Colon v. Coughlin, 58 F.3d 865, 873–74 (2d Cir. 1995).

Drawing all reasonable inferences in plaintiffs' favor, Foote's conversation with Lu suggests that Foote might have been deliberately indifferent or grossly negligent. In that conversation, as plaintiffs describe it, Lu told Foote that his working conditions could not improve because he was Chinese. (Second Am. Compl. ¶ 173.) It is not unreasonable to infer that this conversation alerted Foote to Dantiva's discriminatory practices and she took no curative or

investigatory action. That minimal showing is sufficient to allege her personal involvement at this stage.[3]

Plaintiffs have therefore sufficiently alleged Foote's personal involvement, and defendants' motion to dismiss the discrimination claims against Foote is denied.[4]

## II.   Title VII Claim Against LIBI

Defendants move to dismiss as procedurally barred plaintiffs' Title VII claim against LIBI. Title VII requires plaintiffs to file a timely complaint with the EEOC and to obtain a right-to-sue letter before filing suit in federal court. See 42 U.S.C. § 2000e-5(e), (f). Plaintiffs' failure to obtain right-to-sue letters brought about the Court's first dismissal of their Title VII claim. (See D.E. dated Sept. 10, 2015 ("As stated on the record, plaintiffs' Title VII and ADEA claims are dismissed for failure to comply with the statutory preconditions to suit.").)   Plaintiffs' second amended complaint alleges that they filed charges with the EEOC on June 26, 2015, and received right-to-sue letters on September 23, 2015.

Defendants argue that the Title VII claim is still procedurally barred because plaintiffs' right-to-sue letters are invalid. Under 42 U.S.C. § 2000e-5(f)(1), the EEOC can issue a right-to-sue letter after dismissing a charge of discrimination or after 180 days have passed since the charge was filed. An EEOC regulation, however, permits right-to-sue letters to be issued before 180 days

---

[3] Since plaintiffs' allegations are sufficient under § 1981 and NYSHRL, and "state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall," Ya-Chen Chen, 805 F.3d at 75, they are also sufficient to make out NYCHRL claims.

[4] In opposition to the motion to dismiss, plaintiffs argue that Foote is liable based on so-called "cat's paw" liability, by which an "employer [can be] liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011) (endorsing cat's paw liability for claims brought under the Uniformed Services Employment and Reemployment Rights Act). The Court need not and does not reach this argument, since plaintiffs sufficiently allege Foote's personal involvement as discussed above without relying on this theory. However, the Court does note that cat's paw liability applies to employers, not supervisors, and that contrary to the plaintiffs' assertion, the Second Circuit has not adopted this theory. Nagle v. Marron, 663 F.3d 110, 117 (2d Cir. 2011) (stating the Second Circuit "has neither accepted nor rejected the cat's paw approach" and declining to do so).

8

investigatory action. That minimal showing is sufficient to allege her personal involvement at this stage.[3]

Plaintiffs have therefore sufficiently alleged Foote's personal involvement, and defendants' motion to dismiss the discrimination claims against Foote is denied.[4]

## II. Title VII Claim Against LIBI

Defendants move to dismiss as procedurally barred plaintiffs' Title VII claim against LIBI. Title VII requires plaintiffs to file a timely complaint with the EEOC and to obtain a right-to-sue letter before filing suit in federal court. See 42 U.S.C. § 2000e-5(e), (f). Plaintiffs' failure to obtain right-to-sue letters brought about the Court's first dismissal of their Title VII claim. (See D.E. dated Sept. 10, 2015 ("As stated on the record, plaintiffs' Title VII and ADEA claims are dismissed for failure to comply with the statutory preconditions to suit.").) Plaintiffs' second amended complaint alleges that they filed charges with the EEOC on June 26, 2015, and received right-to-sue letters on September 23, 2015.

Defendants argue that the Title VII claim is still procedurally barred because plaintiffs' right-to-sue letters are invalid. Under 42 U.S.C. § 2000e-5(f)(1), the EEOC can issue a right-to-sue letter after dismissing a charge of discrimination or after 180 days have passed since the charge was filed. An EEOC regulation, however, permits right-to-sue letters to be issued before 180 days

---

[3] Since plaintiffs' allegations are sufficient under § 1981 and NYSHRL, and "state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall," Ya-Chen Chen, 805 F.3d at 75, they are also sufficient to make out NYCHRL claims.

[4] In opposition to the motion to dismiss, plaintiffs argue that Foote is liable based on so-called "cat's paw" liability, by which an "employer [can be] liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011) (endorsing cat's paw liability for claims brought under the Uniformed Services Employment and Reemployment Rights Act). The Court need not and does not reach this argument, since plaintiffs sufficiently allege Foote's personal involvement as discussed above without relying on this theory. However, the Court does note that cat's paw liability applies to employers, not supervisors, and that contrary to the plaintiffs' assertion, the Second Circuit has not adopted this theory. Nagle v. Marron, 663 F.3d 110, 117 (2d Cir. 2011) (stating the Second Circuit "has neither accepted nor rejected the cat's paw approach" and declining to do so).

pass without dismissing the charge if the EEOC certifies that it will probably not be able to complete its administrative processing within 180 days. 29 C.F.R. § 1601.28(a)(2). It is an open question of law in this Circuit whether this regulation is a permissible interpretation of the EEOC's statutory authority. See Hankins v. Lyght, 441 F.3d 96, 101 (2d Cir. 2006). Other courts of appeals, and even the courts within this district, are split on it. Compare, e.g., Martini v. Fed. Nat'l Mortg. Ass'n, 178 F.3d 1336, 1347 (D.C. Cir. 1999) (early right-to-sue letters are invalid); Rodriguez v. Connection Tech. Inc., 65 F. Supp. 2d 107, 110 (E.D.N.Y. 1999) (same), with Walker v. United Parcel Serv. Inc., 240 F.3d 1268, 1274 (10th Cir. 2001) (early right-to-sue letters are valid); Sims v. Trus Joint MacMillan, 22 F.3d 1059, 1061–63 (11th Cir. 1994) (same); Brown v. Puget Sound Elec. Apprenticeship & Training Tr., 732 F.2d 726, 729 (9th Cir. 1984) (same); McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 325–27 (E.D.N.Y. 2002) (same).

It is within the discretion of the district court, however, to excuse a defect in a plaintiff's right-to-sue letter. The Second Circuit has held that a district court acts "well within its discretion by excusing the absence of such a [right-to-sue] letter." Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999). This is because "a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court." Id.; see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

In this case, excusing the alleged defect would be both equitable and efficient. Dismissing plaintiffs' Title VII claim even though they have received right-to-sue letters would be "inequitable, [would] result in wasted resources[,] and [would] penalize [plaintiffs] for the EEOC's procedures." McGrath, 217 F. Supp. 2d at 327 (excusing early right-to-sue letter). Since plaintiffs have complied with the procedure the EEOC set forth for them, "to dismiss [the Title VII] claim

9

because the EEOC issued its right-to-sue letter early would be grossly unfair." Bond v. City of Middletown, 389 F. Supp. 2d 319, 329–30 (D. Conn. 2005); see also McGrath, 217 F. Supp. 2d at 327. If the Court dismisses the Title VII claim on procedural grounds, and plaintiffs "reassert[] [that] claim[] after receiving a proper right-to-sue letter [after 180 days]," then plaintiffs will "eventually end up where [they are] now, with only wasted time and effort to show for it." McGrath, 217 F. Supp. 2d at 327. This is especially true here where the Title VII claim is only one of many race-discrimination claims against LIBI arising out of the same set of facts. It is in the interest of judicial economy to resolve all of these related claims at once. Based on similar reasoning, a number of other district courts in this circuit have permitted Title VII claims to proceed based on early right-to-sue letters. See Ibraheem v. Wackenhut Servs., Inc., 29 F. Supp. 3d 196, 208 (E.D.N.Y. 2014); McGrath, 217 F. Supp. 2d at 327; Bond, 389 F. Supp. 2d at 330. For these reasons, the Court will permit plaintiffs' Title VII claim to proceed based on their right-to-sue letters, despite the letters' early issuance. Defendants' motion to dismiss the Title VII claim against LIBI is therefore denied.

### III.   Zhao's ADEA Claim Against LIBI

Plaintiff Zhao brings the only ADEA claim. Defendants argue this claim is procedurally barred for two reasons. First, defendants note that Zhao filed a charge of discrimination only with the EEOC, not with the New York State Department of Human Rights ("NYSDHR"). Second, they argue that Zhao brought his civil action under the ADEA earlier than 60 days after he filed a charge with the EEOC, in contravention of 29 U.S.C. §§ 626(d), 633(b).

The Court rejects defendants' first argument. "Although Title VII requires aggrieved persons to file first with a state antidiscrimination agency before filing with the EEOC, see 42 U.S.C. § 2000e–5(c), the ADEA contains no such requirement." Brodsky v. City Univ. of New

York, 56 F.3d 8, 9 (2d Cir. 1995). Instead, the ADEA "expressly permits complainants to file simultaneously with the EEOC and a state agency." Id. And where, as in New York, the EEOC "enter[s] into agreements with state or local agencies which authorize such agencies to receive charges" for the EEOC, then "[c]harges received by one agency under the agreement shall be deemed received by the other agency." Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 308 (2d Cir. 1996) (citing 29 C.F.R. § 1626.10(b), (c)). Therefore the fact that Zhao did not file his charge of discrimination with the NYSDHR before the EEOC is not a procedural bar.

His claim is barred, however, by his failure to comply with the ADEA's 60-day requirement.[5] Sections 626(d) and 633(b) explicitly prohibit plaintiffs from bringing suit before 60 days have passed since they filed with the EEOC or state agency: "[N]o suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated," 29 U.S.C. § 633(b); "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission," id. § 626(d)(1). See Brodsky, 56 F.3d at 9 ("Complainants in deferral jurisdictions [like New York] cannot bring a civil action under the ADEA until 60 days after they have filed a charge with the state agency and the EEOC."). This 60-day waiting period is "'an essential element' of the ADEA's statutory scheme," Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 567 (2d Cir. 2006) (quoting Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)), aff'd,

---

[5] In their opposition to the motion to dismiss, plaintiffs do not respond to this argument. (See Pls. Opp. at 19–21 (discussing Zhao's failure to exhaust without mentioning the 60-day requirement raised by defendants).) It would therefore be appropriate for the Court to consider the matter conceded. See, e.g., Frey v. Bekins Van Lines, Inc., 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) (deeming argument plaintiff did not respond to conceded). Even if the Court were to consider the matter to be contested, however, it would dismiss Zhao's ADEA claim on this ground for the reasons set forth below.

552 U.S. 389, because it provides "the EEOC with an opportunity 'to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion,'" id. (quoting 29 U.S.C. § 626(b)).

Generally, "[a] civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, and "[a]mending the complaint . . . [does] not create a new action," Gerber v. MTC Elec. Techs. Co., 329 F.3d 297, 310 (2d Cir. 2003). However, "'[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes.'" Rothman v. Gregor, 220 F.3d 81, 96 (2d Cir. 2000) (quoting Nw. Nat. Ins. Co. v. Alberts, 769 F. Supp. 498, 510 (S.D.N.Y. 1991)). "This rule has been applied to motions to amend a complaint to add plaintiffs asserting new claims against existing defendants" because such motions "put[] the defendants on notice of the claims sought to be asserted." Bensinger v. Denbury Res. Inc., 31 F. Supp. 3d 503, 508–09 (E.D.N.Y. 2014).

Here, Guan commenced this action by filing the complaint on April 18, 2015. (D.E. # 1.) Zhao and his ADEA claim were added in the first amended complaint, filed on June 26, 2015. (See D.E. # 17 ¶¶ 8, 161–67, 209–11.) Zhao filed with the EEOC that same day. (See Second Am. Compl. ¶ 9.)

Zhao has therefore not complied with the ADEA's 60-day requirement. Zhao and his ADEA claim were added when Guan filed the first amended complaint on June 26, 2015, putting defendants on notice of the ADEA claim at that time. Although plaintiffs later filed a second amended complaint, (D.E. # 41), the fact remains that Zhao did not wait the prescribed 60 days before initiating his ADEA claim in court. Instead, he did not wait at all, bringing his claim to the

EEOC on the same day he brought it before this Court. This left the EEOC no opportunity to engage in "informal methods of conciliation, conference, and persuasion," contravening "'an essential element' of the ADEA's statutory scheme." Holowecki, 440 F.3d at 567. Zhao does not purport to have complied with either the statutory procedures or other EEOC guidelines, nor does he offer any reason why his failure to comply is excusable, distinguishing his ADEA claim from the plaintiffs' Title VII claims discussed above. Indeed, plaintiffs do not respond to this argument at all. Zhao's ADEA claim is therefore dismissed without prejudice.

## CONCLUSION

Defendants' motion to dismiss is partially granted, partially denied. Zhao's ADEA claim is dismissed without prejudice. But the motion to dismiss the Title VII claim against LIBI and the § 1981, NYSHRL, and NYCHRL claims against Foote is denied.

SO ORDERED.

Dated: August 10, 2016
Brooklyn, New York

s/Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge

13