FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 11 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHUN LAN GUAN, QIHUAI LIU, ZIQIANG
LU, YOUXING ZHAO, and HUIDE ZHOU, on
behalf of themselves and others similarly situated,

                Plaintiffs,

-against-

LONG ISLAND BUSINESS INSTITUTE, INC.,
MONICA FOOTE, and WILLIAM DANTIVA,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-2215 (CBA) (VMS)

**AMON, United States District Judge:**

In this Fair Labor Standards Act ("FLSA") case, plaintiffs Chun Lan Guan, Qihuai Liu, Ziqiang Lu, Youxing Zhao, and Huide Zhou (together the "Named Plaintiffs") move the Court to conditionally certify their proposed collective action on behalf of all "similarly situated" employees of defendant Long Island Business Institute, Inc. ("LIBI") pursuant to 29 U.S.C. § 216(b). Section 216(b) permits FLSA plaintiffs to represent all "similarly situated" employees who opt in to the collective action by filing notice with the court. One LIBI employee, Huan Yu, has already opted in as a party plaintiff. (See D.E. # 39.) Defendants oppose conditional certification and also ask the Court to exclude Yu from the collective action because she is exempt from FLSA under 29 U.S.C. § 231(a)(1). For the following reasons, plaintiffs' motion for conditional certification is granted as limited below and defendants' request to exclude Yu is denied without prejudice.

## BACKGROUND

The Named Plaintiffs are one former and four current workers in the building-maintenance department at LIBI's campus in Flushing, Queens. The building-maintenance department has two supervisors and six employees. (See D.E. # 61 ¶ 2.) In the allegations relevant to their FLSA

1

claim, the Named Plaintiffs allege that "beginning around June 4, 2007, Defendants operated under a common policy of not paying Plaintiffs and similarly situated employees at one-and-one-half of their regular rate of each hour worked over forty (40) per workweek." (See D.E. # 41 ("Second Am. Compl.") ¶ 42.) "Defendants also understated and continue to understate the overtime hours of Plaintiffs and similarly situated employees of LIBI on their paystub records by reporting either the true hours worked in two (2) weeks or eighty (80) hours, whichever is less." (Id. ¶ 43.) "For every two (2) weeks in which Plaintiffs worked more than eighty (80) hours, Plaintiffs were also paid the product of actual hours worked and the fixed hourly rate. The actual hours worked, however, is displayed as '80' under the 'Hrs/Units' column, while the fixed hourly rate remains unchanged." (Id. ¶ 45.) "Defendants calculated overtime using eighty (80) hours each two (2) weeks rather than forty (40) hours each workweek." (Id. ¶ 46.) "Upon information and belief, Defendants' policy applies to all non-exempt employees of LIBI Schools, and is designed to mitigate liability for their overtime wage violations." (Id. ¶ 47.)

## STANDARD OF REVIEW

Under 29 U.S.C. § 216(b), "any one or more employees" may bring a FLSA action "for and on behalf of himself or themselves and other employees similarly situated." "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010) (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)). Courts commonly refer to this process as "certifying" a FLSA collective action.

Despite this common phrasing, however, "it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power, upheld in

Hoffmann–La Roche, to facilitate the sending of notice to potential class members." Id. at 555 n.10. So-called "'certification' is neither necessary nor sufficient for the existence of a representative action under FLSA." Id. (quoting Hoffmann–La Roche, 493 U.S. at 169). "Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in Hoffmann–La Roche has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." Id. (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008)).

When determining whether to exercise this discretion and facilitate notice to potential opt-in party plaintiffs, courts apply a two-step method. See id. (noting that this method, although not required by FLSA or the Supreme Court, is "sensible"). At the first stage, courts make an initial determination whether potential opt-in plaintiffs "may be 'similarly situated' to the named plaintiffs." See id. (collecting cases). "The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." See id. (internal quotation marks and citation omitted). "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." See id. (internal quotation marks and citation omitted). At this stage, courts review the pleadings and affidavits for "actual evidence of a factual nexus between [plaintiff's] situation and those he claims are similarly situated." Prizmic v. Armour, Inc., No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *7 (E.D.N.Y. June 12, 2006).

At the second stage, courts determine "whether the plaintiffs who have opted in are, in fact, 'similarly situated' to the named plaintiffs." Jin Yun Zheng v. Good Fortune Supermarket Grp.

(USA), Inc., No. 13-CV-60 (ILG), 2013 WL 5132023, at *12 (E.D.N.Y. Sept. 12, 2013). This stage typically happens "once discovery is substantially over . . . [because] the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." Family Dollar Stores, Inc., 551 F.3d at 1261. "The second stage is triggered by an employer's motion for decertification." Id. At the second stage, "[i]f the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims." Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (outlining similar two-step process for ADEA collective actions), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); see also Myers, 624 F.3d at 555 ("At the second stage . . . [t]he action may be 'de-certified' if the record reveals that [the opt-in plaintiffs] are not [in fact similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice.").

## DISCUSSION

### I.  Conditional Certification of the Proposed FLSA Collective Action

To show at this stage that similarly situated opt-in plaintiffs exist, the Named Plaintiffs must make a "modest factual showing" that their proposed opt-in plaintiffs were victims of a common policy or plan that violated the law.

As set forth above, the common policy that the Named Plaintiffs allege they and their proposed opt-in plaintiffs suffered was the understatement of overtime hours. (See, e.g., Second Am. Compl. ¶¶ 42–47.) Specifically, the Named Plaintiffs allege that defendants calculated overtime over two-week periods, rather than every workweek, and did not pay overtime wages

when an employee worked over 40 hours in a week if he worked 80 or less hours over two weeks. (Id. ¶¶ 43–46.) The Named Plaintiffs allege that this practice violated FLSA, see 29 C.F.R. § 778.104 (stating that each workweek stands alone).

The Named Plaintiffs aim to make their required "modest factual showing" with a series of affidavits. See Bittencourt v. Ferrara Bakery & Café, Inc., 310 F.R.D. 106, 111 (S.D.N.Y. 2015) ("In making this showing, plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members."). They first submit an affidavit from each of the five Named Plaintiffs and opt-in plaintiff Yu. Named Plaintiffs Guan, Liu, and Zhou each affirm that "I am unaware of any employees who receive overtime pay in LIBI because . . . I have had conversations with them, and compared wages." (See D.E. # 58-2 ¶ 10; D.E. # 58-3 ¶ 10; D.E. # 58-6 ¶ 10.) Plaintiff Lu affirms, "I am unaware of any employees who receive overtime pay in LIBI because I talked to other coworkers about their wages numerous times." (D.E. # 58-4 ("First Lu Aff.") ¶ 10.) Plaintiff Zhao affirms, "I am unaware of any employees who receive overtime pay in LIBI because I have had conversations with Ziqiang Lu, and compared wages." (D.E. # 58-5 ¶ 10.) Opt-in party plaintiff Yu states, "I am aware of other employees who [do] not receive overtime pay in LIBI because I have had conversations with them numerous times, and I counted work hours of sanitation and maintenance department workers for accounting department." (D.E. # 58-7 ("First Yu Aff.") ¶ 23.) Initially, the Named Plaintiffs relied on these six affidavits to make their factual showing.

Following oral argument, however, and with leave of the Court, the Named Plaintiffs supplemented their showing with five additional affidavits. Two of these are second affidavits from Named Plaintiff Lu and opt-in plaintiff Yu. Plaintiff Lu slightly revises her affirmation, stating, "I know employees outside of the Sanitation department who are paid in the same way

because I have talked with my coworkers outside of the Sanitation department." (D.E. # 70 ("Second Lu Aff.") ¶ 14.) She states that in early 2015 she saw the paystubs of two work-study students—Jason Chu and an approximately thirty-five year old, "chubby" student "with glasses"—which reported total hours over two weeks, not weekly hours. (Id. ¶¶ 15–18.) Opt-in plaintiff Yu, in her supplemental affidavit, states that her husband, "who worked at the Facility Department and is an instructor, and his colleagues Du Miao and Sheng Zong Qi, were all paid on Wednesday," and her "paystub was identical to [her] husband's paycheck." (D.E. # 71 ("Second Yu Aff.") ¶¶ 50–51.) Yu also states "that LIBI did not pay any sanitation workers proper overtime compensation" and that she is "aware of other employees who [do] not receive overtime pay at LIBI" because in 2011, she saw the paystub of Anna Venturino, the Senior Advisor at the Academic Success Center, while cleaning out a desk, and that paystub also showed biweekly not weekly hours. (Id. ¶¶ 59, 66–69.) Lastly, Yu adds that her husband's coworker Sheng Zong Qi, "who worked at both the Manhattan and Flushing campus[es]," was issued a biweekly paystub on every other Wednesday. (Id. ¶ 72.)

The other three supplemental affidavits are from three LIBI instructors: Miao Du, Sheng Zong Qi, and Jia Sheng Wu. (See D.E. # 72 ("Du Aff."), 73 ("Qi Aff."), 74 ("Wu Aff.").) Each instructor states that he or she was not paid overtime and received paystubs reporting biweekly, not weekly, hours. (See Du Aff. ¶ 8; Qi Aff. ¶ 9; Wu Aff. ¶ 15.) Each also affirms that he or she is aware of other employees who are not paid overtime because the other two had similar paystubs and were not paid overtime. (See Du Aff. ¶¶ 17–19; Qi Aff. ¶¶ 18–20; Wu Aff. ¶¶ 22–24.) Additionally, all three attest that they believe the payroll system was the same at the Flushing and Commack campuses because Qi worked at both campuses and received a single biweekly paystub. (See Du Aff. ¶ 20; Qi Aff. ¶ 21; Wu Aff. ¶ 25.)

6

The Named Plaintiffs contend that these affidavits show that they are similarly situated to all non-managerial, non-exempt employees of all LIBI campuses.

The Court concludes that the five, original affidavits fail to establish a "factual nexus" between the Named Plaintiffs—who are all members of the Flushing maintenance department—and any other employees. Those affidavits concern only members of the maintenance department, do not indicate that anyone outside that department was due and not paid overtime, and give no factual details concerning the identities, titles, and pay of allegedly similarly situated employees outside the Flushing maintenance department.

The supplemental affidavits, however, do establish a narrow factual nexus. They identify employees who, like the Named Plaintiffs, were paid on a biweekly basis without any separation of their weekly hours on their pay stubs—Jason Chu and another work-study student, (see Second Lu Aff. ¶¶ 15–18); Yu's husband, (see Second Yu Aff. ¶ 50); Anna Venturino, (id. ¶¶ 59, 66–69); and the three LIBI instructors, Du, Qi, and Wu, (see Du Aff. ¶ 8; Qi Aff. ¶ 9; Wu Aff. ¶ 15). These parties "together were victims of a common policy that violated the law," however, only insofar as they were entitled to overtime wages (for example, by working 50 hours one week even if they worked 80 hours or less over two weeks). Myers, 624 F.3d at 555 (internal quotation marks and citation omitted). And the only factual showing about an entitlement to overtime concerns the three instructors. (See Du Aff. ¶ 8; Qi Aff. ¶ 9; Wu Aff. ¶ 15.) This factual showing, while modest, is sufficient at this stage to "show whether similarly situated plaintiffs do in fact exist." See Myers, 624 F.3d at 555. Based on the instructors' affidavits, it seems that they do.

Defendants argue that this factual showing is insufficient because the three instructors are exempt employees under FLSA. (See D.E. # 75 ("Defs.' Supp. Opp.") at 4–5.) Determining the instructors' status, however, exceeds the proper inquiry at this stage. The Court's "limited role at

this stage is simply to determine whether," based on a modest factual showing, plaintiffs and "other employees were victims of a common compensation policy that violated the FLSA." Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013). "When there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the plaintiff at the preliminary certification stage." Id. (internal quotation marks and citation omitted). More importantly, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action," Hoffmann–La Roche, 493 U.S. at 174, and a court therefore does not "evaluate the underlying merits of a plaintiff's claims . . . nor resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage. Bittencourt, 310 F.R.D. at 111–12 (internal quotation marks and citations omitted). Defendants may ultimately show that Wu, Du, and Qi are exempt under FLSA and not entitled to overtime. But this is not the stage of the litigation during which the Court undertakes that inquiry.

Defendants additionally argue that the plaintiffs' affidavits and supplemental affidavits should be stricken because they were translated but not properly authenticated. (See Defs.' Supp. Opp. at 5.) But as defendants themselves note, Du and Qi are English-language instructors whose affidavits do not indicate that they were translated, nor is there reason to believe they were translated. (See id. at 6 n.2.) Since the burden at this stage is "so low that even one or two affidavits establishing the common plan may suffice," Jeong Woo Kim, 985 F. Supp. 2d at 446 (collecting cases), the two uncontested affidavits are sufficient to merit conditional collective-action certification. The Court therefore does not consider further the challenge to the admissibility of the other affidavits.

8

At this stage, plaintiffs have established a factual nexus—but a limited one. That nexus does not extend beyond the Flushing campus. The only evidence concerning another campus is Qi's statement, reiterated by Wu, Du, and Yu, that the payroll system is the same for the Flushing and Commack campuses because Qi received one paystub for work on both campuses, which used the same accounting department. (See Du Aff. ¶ 20; Wu Aff. ¶ 25; Qi Aff. ¶ 21; Second Yu Aff. ¶¶ 70–72.) Nothing in any affidavit suggests that an employee who did not work at the Flushing campus was entitled to but did not receive overtime. Plaintiffs have provided no probative information regarding even one similarly situated employee who did not work at the Flushing campus, such as "their names, their duties and their hours worked.'" Feng v. Hampshire Times, No. 14-CV-7102 (SHS) (JLC), 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) (citation omitted). The Court declines to conditionally certify the collective action beyond the Flushing campus. See, e.g., Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008) (narrowing proposed notice based on proffered factual showing).

The Court therefore grants the Named Plaintiffs' motion to certify a collective action, limited to non-exempt, non-managerial employees at LIBI's Flushing campus only.

## II. The Proposed Notice

The Court now addresses defendants' specific objections to plaintiffs' proposed notice.

First, the Court will permit a 60-day opt-in period. As defendants point out, courts in this district regularly set opt-in periods of 60 days. See Velasquez v. Digital Page, Inc., No. 11-CV-3892 (LDW) (AKT), 2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014); Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 61 (E.D.N.Y. 2011). Plaintiffs have not persuasively argued that special circumstances requiring a longer period exist, nor do defendants agree to a longer period. See Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011).

9

Second, the Court will permit notice of a three-year statute of limitations keyed to the date of the complaint rather than the date of the notice. Although FLSA's three-year statute of limitations applies only to willful violations, see 29 U.S.C. § 255(a), "[w]here willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action," Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013); see also Rosario v. Valentine Ave. Disc. Store, Co., 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011). And although notice would normally be provided to those employed within three years of the date of the notice, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." Hamadou, 915 F. Supp. 2d at 668 (internal citations and quotation marks omitted). These conclusions concern the opt-in notice only and are without prejudice to defendants' challenging particular opt-in parties in a motion for decertification.

Third, the Court instructs plaintiffs to submit certification that the Mandarin Chinese versions of the proposed notices are complete and accurate translations of the proposed English language versions before such notices are sent. See Wang v. Empire State Auto Corp., No. 14-CV-1491 (WFK) (VMS), 2015 WL 4603117, at *16 (E.D.N.Y. July 29, 2015) (requiring plaintiff to file translators affidavits).

Fourth, the Court instructs defendants to provide to plaintiffs the names, last known addresses, and known email addresses for non-managerial, non-exempt employees who worked for LIBI's Flushing campus between April 18, 2012, and the date of this memorandum and order, but they need not provide other personal information. See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (limiting exchanged information to names, addresses, and email addresses for privacy reasons).

Fifth, the Court approves the posting of notices on employee bulletin boards and in common employee spaces, but only in LIBI's Flushing campus. See, e.g., Whitehorn, 767 F. Supp. 2d at 449 (authorizing posting of notices).

Sixth, the Court authorizes the inclusion of the following information: (1) contact information for defendants' counsel and (2) a statement advising that potential opt-in plaintiffs may be required to participate in discovery and, if they do not prevail, to pay defendants' costs. See, e.g., Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59–61 (E.D.N.Y. 2011); Bah v. Shoe Mania, Inc., No. 08-CV-9380 (LTS) (AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009).

The Court instructs the parties to meet and confer concerning the language of the notice in light of these rulings and file a joint notice within 30 days of this order. If the parties are unable to agree to a joint notice, the Court refers the matter to the Honorable Vera M. Scanlon, United States Magistrate Judge, including the resolution of any disputes, review and approval of the final notice, and supervision of its issuance.

### III. Opt-In Party Plaintiff Yu

One LIBI employee, Huan Yu, has already filed opt-in consent with the Court. (See D.E. # 39.) Defendants contest Yu's opting in by arguing that she is an exempt employee under 29 U.S.C. § 231(a)(1). At the first stage, Yu is entitled to opt in regardless of whether the Court "certifies" the collective action by sending notice to other potential plaintiffs. See Myers, 624 F.3d at 555 n.10. As discussed above, the Court does not determine whether Yu is in fact "similarly situated" to the Named Plaintiffs until the second stage. See id.; see also Jin Yun Zheng, 2013 WL 5132023, at *4. But the second stage happens "once discovery is substantially over" because at that point, "the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." Family Dollar Stores, Inc.,

551 F.3d at 1261. Here, the Court lacks a record sufficient to make an informed factual determination. Indeed the proffered affidavits and exhibits contain contradictory information that precludes an informed determination of Yu's similarity. Yu seems similar in some ways: she works in the building-maintenance department, performs maintenance work, and punches in and out for her lunch break. But in other ways she seems dissimilar: she receives a yearly salary, has responsibilities the plaintiffs do not, and herself helped to record overtime wages in the maintenance department. But the Court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage. Bittencourt, 310 F.R.D. at 111–12 (internal quotation marks and citations omitted). If defendants continue to believe that Yu is not similarly situated after discovery, they may move to decertify the collective action to remove her then. But at this stage, the request to exclude opt-in plaintiff Yu is denied without prejudice.

## CONCLUSION

For these reasons, the Court grants plaintiffs' motion for conditional collective-action certification as limited above and denies without prejudice defendants' request to exclude opt-in plaintiff Yu from the collective action.

SO ORDERED.

Dated: August 11, 2016
       Brooklyn, New York

                                          Carol Bagley Amon
                                          United States District Judge