UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHUN LAN GUAN, QIHUAI LIU, ZIQIANG
LU, and HUIDE ZHOU, on behalf of themselves
and others similarly situated,

                         Plaintiffs,
     -against-

LONG ISLAND BUSINESS INSTUTE, INC.,
MONICA FOOTE, and WILLIAM DANTIVA,

                         Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-02215 (CBA) (VMS)

**AMON, United States District Judge:**

Plaintiffs, represented by Troy Law, PLLC ("Troy Law") brought discrimination and labor law claims against defendants Long Island Business Institute, Inc. ("LIBI"); Monica Foote, the president of LIBI; and William Dantiva, the maintenance supervisor of LIBI's campus in Flushing, Queens (collectively, "Defendants"). On January 6, 2020, counsel for the parties confirmed they had reached a settlement in principle, (see ECF Docket Entry ("D.E.") dated January 6, 2020), and on March 5, 2020, Plaintiffs' counsel filed the parties' motion for settlement approval, (D.E. ## 266, 267 ("Mot. Settl.")). For the reasons that follow, the parties' motion for settlement approval is granted.

## BACKGROUND

Named plaintiffs Chun Lan Guan, Qihuai Liu, Ziqiang Lu, and Huide Zhou ("Named Plaintiffs"); opt-in plaintiff Reify Gonzalez; and former opt-in plaintiff Huan Yu (collectively, "Plaintiffs") are former employees of Defendant LIBI. On April 18, 2015, Guan commenced the above-referenced action against Defendants LIBI and Foote alleging, inter alia, a putative collective action for unpaid overtime under the Fair Labor Standards Act (the "FLSA") and claims for unpaid overtime and records-related violations under the New York Labor Law (the "NYLL").

1

(D.E. # 1.) On May 18, 2015, Liu, Lu, and Zhou consented to become plaintiffs. (D.E. ## 5, 6, 8.) On June 26, 2016, the Named Plaintiffs filed an amended complaint adding Dantiva as a defendant and alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Civil Rights Act of 1866 ("§ 1981"); New York State Human Rights Law (the "NYSHRL"); and the New York City Human Rights Law (the "NYCHRL") for damages arising from alleged discrimination based on race and discriminatory terms and conditions of employment. (D.E. # 17.) On November 7, 2015, Yu consented to become a plaintiff. (D.E. # 39.) On August 12, 2016, the Court granted in part Plaintiffs' Motion for Conditional Certification. (D.E. # 123). On September 27, 2017, Gonzalez filed a consent form to become an opt-in plaintiff. (D.E. # 181.)

The parties engaged in extensive discovery, which included considerable document discovery and twelve different depositions of parties and non-parties. On September 30, 2017, the Court granted in part Defendants' motion for summary judgment, dismissing all of the Named Plaintiffs' hostile work environment claims and limiting the scope of the Named Plaintiffs' discrimination claims under Title VII, § 1981, the NYSHRL, and the NYCHRL. (D.E. # 182). On August 13, 2019, the Court granted Defendants' motion to decertify the FLSA collective action as to Yu and dismissed her claims without prejudice. (D.E. # 249.)

During the pendency of this action, the parties participated in several settlement conferences with the Court. After litigating the case for several years, the parties reached a global settlement resolving all claims, for which they now seek the Court's approval. (Mot. Settl.)

## DISCUSSION

I. **Standard for Approving FLSA Settlements**

"Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." Cheeks v. Freeport

Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). It is generally the role of the district court to evaluate the fairness of each individual settlement based on the circumstances of any given case. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335–37 (S.D.N.Y.2012). The Second Circuit has noted that the "FLSA's primary remedial purpose" is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." Cheeks, 796 F.3d at 207.

"The ultimate question is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" Wolinsky, 900 F. Supp. 2d at 335 (quoting Mosquera v. Masada Auto Sales, Ltd., No. 09–cv–4925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011)); see also Boucaud v. City of New York, No. 07–cv–11098 (RJS), 2010 WL 4813784, at *1 (S.D.N.Y. Nov. 16, 2010) ("In deciding whether to approve a stipulated settlement, the Court must scrutinize the settlement for fairness." (internal quotation marks omitted)). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

"In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." Wolinsky, 900 F. Supp. 2d at 335 (internal quotation marks omitted); see also

3

Cohetero v. Stone & Tile, Inc., 16-cv-4420, 2018 WL 565717, at *2–3 (E.D.N.Y. Jan. 25, 2018) (employing the factors discussed in Wolinsky).

II. **Proposed Settlement Agreement**

The instant motion for settlement approval attaches the parties' proposed settlement agreement between the Named Plaintiffs, Gonzalez, and Defendants, (D.E. # 266-1), and the proposed settlement agreement between Yu and Defendants, (D.E. # 266-2) (collectively, the "Settlement Agreements"). The former agreement provides that the Named Plaintiffs and Gonzalez will receive $309,500.00 total from Defendants, of which $99,500.00—i.e., 34.1468%—will be allocated to Troy Law as attorneys' fees. The latter agreement provides that Yu will receive $60,500 from Defendants, of which $20,664.68—i.e., 35%—will be allocated to Troy Law as attorneys' fees. In total, Troy Law will receive $120,164.68 in attorneys' fees. Both agreements contain a mutual general release and covenant not to sue. (Settlement Agreements ¶¶ 4–5.) They also contain a non-disparagement clause, a provision limiting the parties' communications with the media, and a provision restricting the disclosure of certain discovery the parties exchanged pursuant to a confidentiality stipulation. (Id. ¶¶ 7–9.)

A. Reasonableness

Plaintiffs' counsel states that if the Named Plaintiffs and Gonzalez fully recovered on their claims, they would be entitled to approximately $110,755.75. (D.E. # 266-3.) As Defendants' counsel points out, Plaintiffs stand to recover via the proposed Settlement Agreements over 100% of what they calculate as the damages they could recover at trial. (Mot. Settl. at 4.) Such a recovery is fair and does not run afoul of the FLSA's remedial purposes. See Chowdhury v. Brioni Am., Inc., 16-cv-344, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); Redwood v. Cassway Contracting Corp., No.

16-cv-3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable). The agreements also provide Plaintiffs with certainty about what they will recover from Defendants and avoid the risk, time, and expense of litigation. See Reyes v. Buddha-Bar NYC, 08-cv-2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

As for the last two Wolinsky factors, the parties represent that the proposed settlements are the product of arm's-length negotiations between experienced counsel and that they were not reached by fraud or collusion. (Mot. Settl. at 3.) Further, the settlement was reached after years of vigorous litigation and successful attempts by Plaintiffs' counsel to increase the settlement recovery for their clients, thereby reducing the risk of collusion between the parties. Finally, the settlement was facilitated by this Court, thereby putting the Court in a superior position to assess its fairness. In light of the above, the Court finds that Plaintiffs' recovery is fair and reasonable.

B. Waiver and Release of Claims Provisions

Although some courts scrutinizing FLSA settlements have refused to approve settlements with broad releases of claims, concluding that they conflict with the FLSA's remedial purposes, others have found that "there is nothing inherently unfair about a release of claims in an FLSA settlement." See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Applying the Wolinsky factors to this case, the Court concludes that the mutual releases of claims in the Settlement Agreements are fair and reasonable, and do not run afoul of the FLSA's purpose of preventing abuse by employers. Specifically, Plaintiffs could reasonably conclude that the provisions releasing claims were a satisfactory compromise in this case. This is particularly true given that the Settlement

Agreements provide in excess of 100% compensation for the several non-FLSA claims brought by Plaintiffs. (See D.E. # 266-3.) Moreover, the releases of claims in the Settlement Agreements are mutual, binding both Plaintiffs and Defendants and thereby "assuaging concerns that the waiver unfairly benefits only Defendants." Lola, 2016 WL 922223, at *2. Accordingly, the Court finds that, under the circumstances of this case, the release provisions in the Settlement Agreements do not conflict with the FLSA's remedial purposes or otherwise prevent the Court from finding that the Settlement Agreements are fair and reasonable.

C. Non-Disclosure Provisions

The Settlement Agreements also contain limited confidentiality provisions. (Settlement Agreements ¶¶ 7–9.) Although "in certain cases, confidentiality provisions may excessively restrict plaintiffs' ability to discuss settlements and thus run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair," Lola, 2016 WL 922223, at *2 (internal quotation marks and alteration omitted), the Court finds that this concern is not present here. Specifically, the Settlement Agreements' "Publicity and Announcements," "No Disparagement," and "Confidentiality Obligations" provisions do not unduly restrict Plaintiffs' ability to discuss the settlement, which has been publicly docketed. These provisions merely prevent the parties from disparaging one another and related parties, issuing press releases or communicating with the media about the agreements, and disclosing certain discovery that the parties had agreed to keep confidential during the course of the litigation. Although these provisions do place some limits on Plaintiffs' ability to discuss the settlements, the limits are not absolute and do not restrict Plaintiffs' general ability to discuss the settlements. Considering the totality of the circumstances, the Court concludes that these provisions are "the result of fair bargaining between well-represented parties and embod[y] a reasonable compromise that does not

conflict with the FLSA's purpose of protecting against employer abuses." Id. (approving FLSA settlement that included confidentiality provisions preventing Plaintiffs from "contact[ing] the media or utiliz[ing] any social media regarding th[e] Settlement or its terms" and requiring Plaintiffs and their counsel, if contacted about the settlement, to respond "'no comment' or be limited solely to words to the following effect: 'The matter has been resolved.'").

    D. Attorneys' Fees

The Court evaluates the reasonableness of the attorneys' fees under 29 U.S.C. § 216(b) and NYLL § 663(1) to ensure that the simultaneous negotiation of fees and the settlement amount does not create a conflict between counsel's interest in fees and plaintiffs' interest in obtaining the best possible recovery. See Wolinsky, 900 F. Supp. 2d at 336. To assess the reasonableness of the proposed attorneys' fees, a court will review contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done to calculate the lodestar amount. Id. (citing N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)); see also Run Guo Zhang v. Lin Kumo Japanese Rest., Inc., 13-cv-6667, 2015 WL 5122530, *2 (S.D.N.Y. Aug. 31, 2015) (same). Although courts in this Circuit had routinely imposed a proportionality limit on attorneys' fees in FLSA actions—specifically, limiting attorneys' fees to 33% or less of the net settlement amount—the Second Circuit recently rejected this approach, reasoning that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees," and that such a rule would be "inconsistent with the remedial goals of the FLSA." Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020). The Fisher court held that "district courts should not, in effect and practice, implement such a limit," and that, in most FLSA cases, which involve low-wage workers and modest damages amounts, "it does not make sense to limit fees to 33% of the total settlement." Id. at 603.

Here, Troy Law submitted a 25-page invoice documenting the dates, hours expended, and nature of the work done by each attorney, as well as itemized expenses. (D.E. # 266-4.) The invoice shows that total billables amount to $326,865.00, and total expenses amount to $8,916.99. The billables include the work of multiple professionals, with hourly rates ranging from $150 to $550 for an experienced attorney. Plaintiffs' counsel is receiving less in attorneys' fees than they have billed on this matter, and their fees are consistent with the terms of Plaintiffs' retainer agreements. The Court finds this to be a fair and reasonable attorneys' fee in this action.

## CONCLUSION

For the foregoing reasons, the Court approves the parties' motion for settlement approval. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: March 18, 2020
    Brooklyn, New York

    /s/ Carol Bagley Amon
    Carol Bagley Amon
    United States District Judge